**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JOHNNY DALTON BEAGLES,**

    **Petitioner,**
v.                                                                              Case No. 4:24cv093-AW/MAF

**RICKY DIXON, Secretary,
Florida Department of Corrections,**

    **Respondent.**
_____/

## REPORT AND RECOMMENDATION

On January 26, 2024, Petitioner Johnny Dalton Beagles, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On May 3, 2024, Respondent filed an answer, with exhibits. ECF No. 8. Petitioner Beagles filed a reply, with exhibits, on September 20, 2024. ECF No. 15.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. For the reasons stated herein, the filings before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## **Procedural Background**

By information filed September 4, 2018, in Holmes County Circuit Court Case 2018-CF-316, the State of Florida charged Petitioner Johnny Dalton Beagles with one count of arson, a first degree felony, contrary to section 806.01(1)(a), Florida Statutes, in connection with events that occurred on January 5, 2018. Ex. A at 24.[1] Beagles proceeded to a jury trial August 26 through August 28, 2019. Ex. A at 154-248; Ex. B (trial transcript). He did not testify at the trial. *See* Ex. B at 349-51. The jury found him guilty as charged. Ex. A at 118; Ex. B at 512. On September 11, 2019, the judge adjudicated Beagles guilty and sentenced him to twenty (20) years in prison. Ex. A at 137-43, 266-77.

Beagles appealed to the First DCA, assigned case number 1D19-3527, and his counsel filed an initial brief raising four points. Ex. C. The State filed an answer brief, Ex. D, and Beagles' counsel filed a reply brief, Ex. E. On June 24, 2020, the First DCA affirmed the case without a written opinion. Ex. F; Beagles v. State, 301 So. 3d 197 (Fla. 1st DCA 2020) (table). Beagles, through counsel, filed a Motion for Rehearing, Clarification, Written Opinion, or Rehearing En Banc, Ex. G, which the First DCA denied by order

---

[1] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No.8.

on September 1, 2020, Ex. H.  The mandate issued September 1, 2020.  Ex. I.  Beagles did not seek review in the Florida Supreme Court or the U.S. Supreme Court.  *See* ECF No. 1 at 2; ECF No. 8 at 2.

On November 3, 2020, Beagles filed a pro se Motion for Postconviction Relief, pursuant to Florida Rule of Criminal Procedure 3.850, raising ten (10) claims of ineffective assistance of counsel (IAC).  Ex. J at 23-55 (exclusive of attachments).  By order on December 14, 2020, the state post-conviction trial court found the claims facially insufficient and allowed Beagles sixty (60) days to file an amended motion.  *Id*. at 79-80.  On or about January 29, 2021, Beagles filed an amended Rule 3.850 motion, raising six (6) IAC claims.  *Id*. at 81-94.  By order on August 18, 2021, the state post-conviction trial court denied Ground 1, ordered the State to respond to Grounds 2 through 5 within sixty (60) days, and reserved ruling on Ground 6, which alleged cumulative error.  *Id*. at 97-101 (exclusive of attachments).

On August 25, 2021, before the State filed a response, Beagles filed a second amended Rule 3.850 motion, raising nine (9) IAC claims.  *Id*. at 108-53.  By order on October 13, 2021, the court struck the second amended Rule 3.850 motion as an abuse of procedure and unauthorized.  *Id*. at 154-55.  Later that day, the State filed its response to Grounds 2 through 5 of the amended Rule 3.850 motion.  *Id*. at 156-60 (exclusive of attachments).

Case No. 4:24cv093-AW/MAF

On November 23, 2021, Beagles filed a pro se motion for leave to amend his Rule 3.850 motion and supplement Ground 2, *id*. at 171-73, and a supplemental amended motion, *id*. at 174-79. On March 30, 2022, through counsel, Beagles filed a motion requesting that the State be ordered to respond or, in the alternative, that an evidentiary hearing be set or a final order be entered on his request for post-conviction relief. *Id*. at 183-84.

The state post-conviction trial court entered three orders on April 6, 2022. In the first order, the court granted Beagles' motion for leave to amend Ground 2 and accepted the supplemental amended motion for consideration. *Id*. at 187-88. In the second order, the court struck the motion filed March 30, 2022, with leave to re-file because counsel had filed the motion without filing any notice of appearance in the case. *Id*. at 185-86. In the third order, the court determined an evidentiary hearing should be held on Ground 2, summarily denied Grounds 3, 4, and 5, and reserved ruling on Ground 6 until after the evidentiary hearing. *Id*. at 189-95 (exclusive of attachments).

The evidentiary hearing took place on August 10, 2022. *Id*. at 469-510. Beagles was represented by counsel. *See id*. at 471. In a final order rendered October 13, 2022, the state post-conviction trial court denied the remaining claims for relief in Ground 2 as amended and Ground 6. *Id*. at 345-352 (exclusive of attachments).

Beagles appealed to the First DCA and filed a pro se initial brief in assigned case number 1D22-3947, challenging only the state post-conviction trial court's denial of Ground 2.  Ex. K.  The State filed an answer brief.  Ex. L.  Beagles filed a reply brief.  Ex. M.  On October 10, 2023, the First DCA affirmed the case per curiam without a written opinion.  Ex. N; <u>Beagles v. State</u>, 372 So. 3d 258 (Fla. 1st DCA 2023) (table).  The mandate issued November 7, 2023.  Ex. O.

As indicated above, on January 26, 2024, Beagles filed his § 2254 petition.  ECF No. 1.  The petition presents one ground, alleging his trial counsel provided IAC by "failing to convey a favorable 36-month plea offer and advise him with all the information necessary to make an informed decision."  *Id*. at 12.  Respondent filed an answer, with exhibits, ECF No. 8, and Petitioner Beagles filed a reply, with exhibits, ECF No. 15.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*.

For IAC claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell

Case No. 4:24cv093-AW/MAF

below an objective standard of reasonableness." *Id.* at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*  The Strickland test applies to IAC claims arising out of the plea process.  Hill v. Lockhart, 474 U.S. 52, 57-58 (1985).

In the only ground presented in the § 2254 petition, Beagles challenges the state courts' rejection of his IAC claim alleging his trial counsel, Richard Kerry Adkison, did not convey a favorable plea offer and advise him with all the necessary information to make an informed decision regarding the plea

offer.  ECF No. 1 at 12.  In particular, Beagles asserts the state post-conviction trial court did not make the proper factual findings regarding the prejudice prong of Strickland, *id*. at 14, and the court's factual findings are not supported by the record, *id*. at 18.  As Respondent indicates, ECF No. 8 at 12, Beagles exhausted his state court remedies as to this claim.  *See* 28 U.S.C. § 2254(c); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In denying the claim, the state post-conviction trial court made the following findings regarding Beagles' allegations:

> In **Ground Two**, the Defendant alleges that counsel was ineffective for failure to convey a plea offer of 36 months DOC. [Ex. J at 176; 471.]  In his motion, Defendant submits that this plea offer was discussed with the Defendant's father, Chad Beagles, but never Defendant.  [Ex. J at 172, 175.]
>
> For this type of ineffective of assistance of counsel claim, while the first prong of Strickland remains the same, to establish the prejudice prong, a defendant must allege and prove a reasonable probability that 1) he would have accepted the offer with correct advice, 2) the state would not have withdrawn the offer, 3) the court would have accepted the offer, and 4) the sentence would have been less severe.  *See* Alcorn v. State, 121 So. 3d 419, 430 (Fla. 2013).
>
> In the State's response, they articulate that Defendant's allegations are without merit.  [Ex. J at 157-58.]  The State attached letters reflecting plea offers from the ASA to defense counsel in the instant case.  [Ex. J at 161-70.]  Further, the State submits that they have found nothing to indicate a 30 month plea offer ever having being made.  [Ex. J at 158.]  However, the Defendant supplemented his motion as to this ground to submit that it was a 36 month plea offer.  [Ex. J at 176.]

> Either way, whether it was 30 months or a 36 months offer, the Court is unable to refute Defendant's allegations from the record after reviewing the transcripts and/or open court recorded proceedings. Thus, the Defendant was entitled to a limited evidentiary hearing as to this issue. *See* Mills v. State, 312 So. 3d 153 (Fla. 1st DCA 2021); *see also* Hartfield v. State, 312 So. 3d 172 (Fla.1st DCA 2021).

Ex. J at 348. The court made findings regarding Beagles' testimony at the evidentiary hearing:

> At the evidentiary hearing, the Court first heard from Defendant, Johnny Dalton Beagles. [Ex. J at 473-84.]
>
> Mr. Beagles testified that to his knowledge, he was not aware of any plea offer until after trial and while he was at DOC serving his present sentence in this case, wherein he learned of a 36 month DOC offer. [Ex. J at 474-75; *see* Ex. J at 481-82.] In effect, Mr. Beagles submits that he never discussed any plea offer with his counsel. [Ex. J at 475; see Ex. J at 481-82.] However, Mr. Beagles articulates that had his attorney advised him of the offer, he would have accepted it, and it was in his best interest, and he would not be serving a 20-year DOC sentence. [Ex. J at 475.]
>
> [On cross-examination,] Mr. Beagles testified that he was married to Hannah Beagles. [Ex. J at 476.] Further, Mr. Beagles agreed that Hannah Beagles testified in his favor at trial; however, she gave conflicting statements to law enforcement a month before the trial. [Ex. J at 476.] But, he was sure that with Hannah Beagles' testimony he would be found not guilty to corroborate his alibi that he was not even in Holmes County at the time of [the] arson [offense]. [Ex. J at 476-79.] Based upon her testimony, Mr. Beagles agreed that he was pretty confident [he would be] found not guilty based upon Hannah Beagles' testimony and alibi. Thus, he was confident by [sic] the advice of his counsel, ["if the judge followed by the law, he was going to give me judgment of acquittal, exact words out of Kerry Adkison's mouth."] [Ex. J at 479.] Accordingly, even knowing all of that,

>> Mr. Beagles testified and reiterates that he would still take the 36 months DOC plea offer. [Ex. J at 479.]
>
>> Further, when questioned, Mr. Beagles remembered being on conditional release for an unrelated offense in Holmes County before trial. [Ex. J at 479-80.] However, Mr. Beagles does not remember telling the probation officer, Ms. Cook, that he was not getting convicted of the arson offense. [Ex. J at 479.]
>
>> Additionally, Mr. Beagles stated that he does not remember or recall talking to counsel [in] the weeks before trial. [Ex. J at 479-80.] Further, Mr. Beagles does not remember any 48 months DOC plea offer or it ever being conveyed by counsel. [Ex. J at 481-82.]

Ex. J at 348-49. The court then made findings regarding the testimony of Beagles' trial counsel at the evidentiary hearing:

>> Next, the Court heard from Defendant's trial counsel, Kerry Adkison, Esq. [Ex. J at 484-92]. Mr. Adkison was Defendant's trial counsel, and he has been practicing law for the last 30 years. [Ex. J at 485.] In testimony, Mr. Adkison testified that the trial occurred in August 2019. [Ex. J at 485.]
>
>> Before trial, Mr. Adkison articulated that the defense initially received a plea offer from the State for 48 months DOC. [Ex. J at 485-86.] However, on August 19, 2019, the State updated the plea offer to 36 months DOC. [Ex. J at 486.] Mr. Adkison stated that he conveyed the plea offers to the Defendant and spoke to him; however, he does not have a written record of it. [Ex. J at 486.] Mr. Adkison stated that based upon his calendar, he was in constant contact with the defendant in this case either in court or at his office. [Ex. J at 486.] . . . Mr. Adkison submitted that his standard operating procedure and common practice [is] to convey plea offers to his clients. [Ex. J at 486-87.]
>
>> According to Mr. Adkison, . . . Defendant felt that his wife, Hannah Beagles, would testify that he was with her the entire time during the criminal offense and he did not set any fires. [Ex.

J at 487.] Therefore, Mr. Adkison testified that Hannah Beagles was a good witness for the defense. [Ex. J at 487.] More importantly, Mr. Adkison explained how the Defendant conveyed to counsel that he would not have accepted the plea offers from the State. [Ex. J at 487.] When asked why, Mr. Adkison states that Defendant ["]was adamant he was going to trial.["] [Ex. J at 487.] In fact, Mr. Adkison explained that he was sure that Defendant would have not accepted any [plea] offer involving DOC time, including even a non-prison sanction. [Ex. J at 487.] According to Mr. Adkison, Defendant was confident about his success at trial. [Ex. J at 487.]

Further, during Mr. Adkison's representation of his client, Mr. Adkison described or classified the volatile relationship between Defendant and Hannah Beagles. [Ex. J at 487-88.] However, when Defendant and Hannah Beagles would come into his office, Mr. Adkison would act as an intermediary between the two to make peace between them because she (Hannah Beagles) was a key witness for the defense in this case. [Ex. J at 488.] Thus, Mr. Adkison described how he would have to get onto Defendant, and say she is your witness, and do nothing to affect that for your trial. [Ex. J at 488.]

According to Mr. Adkison, if Hannah Beagles testified as she would have without giving that statement to a law enforcement officer prior to trial, [he believed] Defendant would have been found not guilty at trial. [Ex. J at 488.] However, Hannah Beagles conflicting statements to law enforcement changed the outcome or a key point in the entire trial. [Ex. J at 488-89.] Hannah Beagles was very adamant up until the statement to law enforcement close to trial that Defendant was with her, and he did not commit the arson. [Ex. J at 488-89.] However, when Hannah Beagles' statement came out to law enforcement [in August 2019], Mr. Adkison stated that she attempted to retract that statement at some point in time. [Ex. J at 489.] Despite this fact, counsel discussed this with the Defendant and he was still confident she was going to testify at trial for him and ultimately to her detriment, which resulted in a perjury charge for Hannah Beagles. [Ex. J at 489.]

> Mr. Adkison testified that Defendant would have not accepted any plea offers even if it was in his best interest. [Ex. J at 489.] However, counsel reiterated that it was his standard practice to convey all plea offers to his clients. [Ex. J at 489-90.] Additionally, [on cross-examination,] Mr. Adkison testified that the State had no eyewitnesses up until Hannah Beagles statement to law enforcement. [Ex. J at 490.] Thus, there were no surprises at trial to the best of counsel's knowledge. [Ex. J at 490-91.] [On redirect, he testified that] [h]owever, unfortunately, when Hannah Beagles did testify at trial, it resulted in her statement being published and played to the jury due to her conflicting statements. [Ex. J at 492.] Mr. Adkison testified that he argued that vigorously at the trial level concerning Hannah Beagles' statement being admitted and published and on appeal. [Ex. J at 492.]

Ex. J at 349-50. The court next made findings regarding the testimony of the third, and final, witness at the evidentiary hearing, Holmes County Probation Officer Tanya Cook:

> Finally, the Court heard from Ms. Tanya Cook, Holmes County Probation Officer. [Ex. J at 494.] According to Ms. Cook, she has been a probation officer for 18 years. [Ex. J at 494.] In testimony, Ms. Cook articulated that she was supervising the Defendant on conditional release for an unrelated case during the time of the instant arson case including all the way up until trial in this cause. [Ex. J at 494-95.] The last day of Defendant's supervision by Ms. Cook included August 26, 2019. [Ex. J at 495.] Ms. Cook testified about Defendant's demeanor of his arson charge, and how Defendant was assured he was going to get off for the arson offense. [Ex. J at 495.] In fact, Ms. Cook described how the Defendant was sure of himself and arrogant. [Ex. J at 495.] However, Ms. Cook could not recall whether Defendant stated that he was not going to take a plea. [Ex. J at 495.]

Ex. J at 350. The court set forth the Strickland standard, id., and then

explained conflicts in the hearing testimony, credited the testimony of Adkison and Cook over that of Beagles, and denied relief:

> Defendant testified that he was not aware of any plea offers either 48 months DOC, or 36 months DOC. [Ex. J at 474-75, 481-82.]  However, it was Mr. Adkison's common practice and procedure to convey all plea offers to his clients. [Ex. J at 486-87.]  Thus, there is a conflict in the testimony presented.  The Court finds that the Defendant's testimony is unreliable and subject to credibility issues.  According to testimony of defense counsel and Ms. Cook, Defendant believed that he had a very good chance at winning his trial. [Ex. J at 487-89, 495.]  The Court finds that the testimony of Mr. Adkison and Ms. Cook to be credible.
>
> Although defense counsel argued vigorously at trial concerning Hannah Beagles statement to law enforcement, after her trial testimony, the statement was ultimately played to the jury due to conflicting statements after the trial judge's ruling. (TT 256-325; 358-372; 382-390)  Despite the foregoing, Defendant submits in testimony that he would have accepted the plea offer [Ex. J at 479]; however, Defendant's demeanor and arrogance reflects that he [believed he] would have been acquitted.  Thus, no matter what the State's plea offer was in this case, it is apparent from the testimony of counsel that the Defendant was adamant about going to trial.  Defendant fully believed that Hannah Beagles' testimony was his ace in the hole, but for her conflicting statements before trial, and the cross examination, the trial likely would have gone in a completely different direction.
>
> Defendant's ground clearly falls short in this case at the time of the trial.  Defendant wanted a trial and got a trial and an opportunity to prove his innocence, and he thought that he would get off, due to Hannah Beagles' testimony, but unfortunately, it didn't go in his favor and the trial court ruled differently.  Further, it is unethical for a defense attorney to promise and/or advise as to a particular outcome.  Here, defense counsel does not have a crystal ball.  However, counsel stated that it was a circumstantial case, with not much evidence, until Hannah Beagles conflicted

> and contradicted her own testimony at trial. [Ex. J at 490-92.]
>
> The Court finds that the Defendant failed to show that trial counsel's performance was deficient, and that the deficient performance prejudiced him in any way. The Defendant's allegations fail to establish either prong of Strickland v. Washington, 466 U.S. 668, 687 (1984). As a result, this ground is due to be denied.

Ex. J at 350-51.

On appeal, the First DCA per curiam affirmed the case without a written opinion. Ex. N. This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Wright v. Sec'y, Dep't of Corr., 278 F.3d 1245, 1254-55 (11th Cir. 2002). A review of the record supports the state courts' determination. *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

In particular, the record references in brackets in the quoted portions of the state post-conviction trial court's order, above, support the court's

findings regarding the testimony presented at the evidentiary hearing. In denying the claim, the state post-conviction trial court judge accepted the testimony of Beagles' trial counsel, Kerry Adkison, and Beagles' probation officer, Tanya Cook, over that of Beagles where conflicts occurred, particularly in determining that Beagles would not have accepted any plea offer and wanted to proceed to trial, believing the jury would find him not guilty. The state post-conviction trial court judge sits as the fact-finder and determines witness credibility in a Rule 3.850 proceeding. *See, e.g.*, Consalvo v. Sec'y for Dep't of Corr., 664 F. 3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.); Smith v. State, 697 So. 2d 991, 992 (Fla. 4th DCA 1997); Fla. R. Crim. P. 3.850(d). "Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" Consalvo, 664 F.3d at 845 (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).

Given this credibility determination, as the state post-conviction trial found, Beagles has not shown prejudice because he has not demonstrated that he would have accepted the plea offer but for the alleged ineffectiveness of counsel. *See* Lafler v. Cooper, 566 U.S. 156, 164 (2012) (clarifying that Sixth Amendment right to effective assistance of counsel extends to

negotiation and consideration of plea offers that lapse or are rejected, and concluding that, to establish prejudice, defendant must show reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed"). The record, particularly the testimony of Adkison and Cook at the evidentiary hearing, supports the post-conviction trial court's finding, affirmed by the First DCA, that Beagles' assertion that he would have accepted the plea is not credible given the testimony presented at the evidentiary hearing that he wanted to go to trial because he felt confident the jury would find him not guilty.

## **Conclusion**

Based on the foregoing, Petitioner Beagles has not shown that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground, and the § 2254 petition, should be denied.

## **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability. The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on December 17, 2025.

        **S/ Martin A. Fitzpatrick**
        **MARTIN A. FITZPATRICK**
        **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  **Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control**.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**